ANTHONY ATRIA, d/b/a New Look Decorators, Plaintiff and Counter-defendant-Appellee, *v.* HERBERT GEIST *et al.*, Defendants and Counterplaintiffs-Appellants.

Second District   No. 77-118

Opinion filed September 15, 1978.

Charles Anthony Brady, of Oak Brook, and Finn, Geiger & Rafferty, of Waukegan, for appellants.

Wayne B. Flanigan, of Wasneski, Yastrow, Kuseski & Flanigan, of Waukegan, for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Anthony Atria, d/b/a New Look Decorators, plaintiff-counterdefendant-appellee, hereinafter, plaintiff, filed a complaint against Herbert Geist and Millicent Geist, defendants-counterplaintiffs-appellants, hereinafter collectively referred to as the defendants and individually as Mr. Geist and Mrs. Geist, to collect $2,000, which was the remainder left unpaid on a $12,600 flat fee contract to decorate and paint certain portions of the interior and exterior of a residence owned by the defendants at 955 Lake Road, Lake Forest, Illinois. Plaintiff also averred that defendants owed him $1,470 for extras to the contract, or, in the alternative, $850. Defendants filed an answer to plaintiff's complaint which alleged that plaintiff's performance under the contract was incomplete and improper and denied that any extras were ever agreed to by the parties. In addition, defendants filed an amended counterclaim for damages of $8,031.50 allegedly brought about by plaintiff's improper workmanship. The trial court entered judgment in favor of plaintiff on his complaint in the amount of $2,800 plus plaintiff's costs of suit and also denied defendants' counterclaim in its entirety. Defendants appeal from the entry of this order.

On appeal, two issues need to be discussed: (1) Whether the trial court erroneously barred certain expert testimony; and (2) Whether there is a sufficient basis in the record to sustain the trial court's judgment. After a review of the record and briefs, we affirm the judgment of the circuit court of Lake County.

A recitation of the material facts is necessary for an understanding of our decision.

On March 3, 1973, plaintiff, a sole proprietor painting contractor, toured the defendants' 20-room home in Lake Forest, Illinois, with Mrs. Geist and submitted an estimate of $12,600 for the painting of defendants' home. Plaintiff's estimate included $8,400 for the exterior work and $4,200 for interior work pursuant to Mrs. Geist's specifications and requests and which sum was agreed to by Mrs. Geist in the aggregate amount of $12,600. The plaintiff began work on the premises on May 1, 1973, at which time he consulted with Mr. Geist, who requested a clarification of

the work to be done. Plaintiff toured the premises with Mr. Geist, who gave plaintiff permission to commence work. Mr. Geist then signed a document admitted at trial as plaintiff's exhibit No. 2, which set out the specifications and estimates for plaintiff's painting services and materials for defendants' home, excluding the cost of wallpaper. Plaintiff and his employees proceeded to perform the work under the contract from May through November 18, 1973. On approximately November 8, 1973, plaintiff and Mrs. Geist went from room to room concerning the work remaining to be done, and Mrs. Geist signed a document prepared by plaintiff which specified the work remaining. Prior to November 18, 1973, defendants had paid plaintiff $10,600 for his work, which left $2,000 remaining to be paid on the contract. Thereafter, plaintiff prepared an itemized list of "extras" in the amount of $1,470 which he presented to Mr. Geist at their final meeting on November 18, 1973, together with plaintiff's demand for final payment of $2,000 on the contract. Plaintiff testified that Mr. Geist examined the list of extras, stated that he wanted to settle the matter, and offered plaintiff $2,850 as a compromise sum. Plaintiff said he would return at a later time to finish various items Mr. Geist had requested during this discussion that were not yet completed. At this time, plaintiff gave Mr. Geist a waiver of lien in the amount of $13,450 and testified that Mr. Geist promised him that he would put a check for $2,850 in the mail to the plaintiff the next day. Plaintiff testified, however, that he never received the promised check.

Raymond C. Olson, an estimator in painting and decorating for the Theodore Ebert Company, testified for the defendants that he had approximately 15 years' experience as an estimator in the painting and decorating field. In all of the 15 years excepting the last 2, Mr. Olson had combined his duties as an estimator with being a painter or superintendent. Mr. Olson did not have any formal education in chemistry, and his qualifications as an expert consisted entirely of the above experience. Defense counsel, at this stage of the trial, tendered Mr. Olson to the court as an expert at estimating for the purpose of propounding certain hypothetical questions concerning the cause of paint failure in plaintiff's work at defendants' home. Plaintiff objected to Mr. Olson's qualifications as an expert. Plaintiff's objections to Mr. Olson's ability as an expert were based on his lack of knowledge of the chemical components of paint. Additionally, plaintiff averred that Mr. Olson's testimony was tainted and hearsay because Mr. Olson had sought outside assistance from the Pittsburgh Paint Company in rendering an opinion on the paint chip samples that were submitted, and this information was to be part of the basis of Mr. Olson's answer to hypothetical questions. The trial court sustained plaintiff's objection on the ground that an insufficient foundation had been laid to qualify Mr. Olson to testify concerning paint

failure. Defense counsel then proceeded to question Mr. Olson pertaining to the various jobs in which he had participated in his capacity as an estimator. Thereafter, defense counsel renewed his request to qualify Mr. Olson as an expert. Plaintiff objected and the trial court again sustained plaintiff's objection on the basis that it was not satisfied that Mr. Olson was an expert in the particular area of paint failure in order to permit him to answer a hypothetical on that subject. Thereafter, defendants' counsel made an offer of proof that Mr. Olson's answer to the hypotheticals presented would be that the failure of the loggia (a roofed, open gallery) was due to improper preparation and that the failure of other interior and exterior painting and decorating work at defendants' home was due to improper preparation and, in some instances, improper material.

Mr. and Mrs. Geist testified in their own behalf for the defense. Mrs. Geist attested to her dissatisfaction with plaintiff's work in terms of his painting preparation and application, which she said she communicated to the plaintiff on numerous occasions. Her testimony, however, in all other respects was in substantial congruity with plaintiff's affirmations.

Mr. Geist testified that plaintiff stated at their initial meeting that he would give Mr. Geist satisfaction and that his word was his bond. Mr. Geist asserted that he made various complaints to the plaintiff concerning the quality of his work, and as a result held back approximately $2,000 when plaintiff requested final payment in August of 1973. Mr. Geist observed that at their last meeting on November 18, 1973, plaintiff demanded the remaining payment due under the contract and also submitted a bill in the sum of $1,470 for a list of extras that plaintiff had completed over and above what the parties had agreed. Mr. Geist remarked that the parties finally compromised and he agreed to pay plaintiff $2,000 plus $850 for the extras if plaintiff would promise to return in no less than a week and finish the remaining work. Plaintiff then left, but Mr. Geist changed his mind approximately an hour later after conversing with Mrs. Geist. Instead of sending plaintiff a check for the compromised sum of $2,850, Mr. Geist sent plaintiff a letter which noted the parties' aforementioned compromised agreement and stated that he was very unhappy with plaintiff's work as well as his veracity. Additionally, Mr. Geist informed plaintiff that a responsible painting contractor would be hired to correct plaintiff's mistakes and that the cost of such reparation would be deducted from the balance due plaintiff under the contract. Mr. Geist also sent plaintiff three additional letters on December 12, 1973, January 7, 1974, and January 31, 1974, whereby he demanded performance and set forth the complaints the defendants had with plaintiff's workmanship. Subsequently, Mr. Geist hired a painting contractor, the Theodore Ebert Company, to do substantial interior and exterior painting and decorating rework which was allegedly necessitated

by plaintiff's defective workmanship. At the time of trial, the Ebert Company had completed exterior rework in the sum of $4,125.50 and had estimated the necessary interior rework required to rectify plaintiff's work to be in the amount of $3,822. In all other respects, Mr. Geist's testimony was in accord with plaintiff's testimony.

Defendants contend first on appeal that the trial court erroneously prohibited their expert witness, Mr. Olson, from testifying concerning the cause of the paint failure on the loggia and other interior and exterior sections of the defendants' home, an area of expertise on which the defendants aver Mr. Olson was well qualified to express an opinion.

The principles in regard to the admission of expert testimony are well settled. Generally, an individual will not be permitted to testify as an expert unless the witness has exhibited a distinctive knowledge or expertise beyond that of the average person. (*Hagerman v. National Food Stores, Inc.* (1972), 5 Ill. App. 3d 439, 283 N.E.2d 321.) The question of whether a witness is qualified to testify as an expert is a question of fact for the trial court to determine in the first instance (*Schwartz v. Alton & Southern Ry. Co.* (1976), 38 Ill. App. 3d 528, 347 N.E.2d 829) and its decision will be overturned on review only upon a demonstration of a clear abuse of sound judicial discretion (*Hardware State Bank v. Cotner* (1973), 55. Ill. 2d 240, 302 N.E.2d 257).

■ ■ Our review of the trial court's ruling which denied the admission of Olson's expert testimony as to the cause of the paint failure conclusively establishes that the trial court abused its sound judicial discretion in excluding this testimony. The trial court herein had ample opportunity to view the demeanor and qualifications of Mr. Olson. However, the trial court's determination that this witness was not an expert is clearly erroneous in light of Mr. Olson's background and experience in all phases of the painting field over the last 15 years. Mr. Olson was eminently qualified to testify concerning the cause of the exterior and interior paint failure at defendants' home, and his lack of knowledge in regard to the chemical components of paint certainly should not exclude an individual with his vast experience and expertise from testifying that the work was improperly prepared. Accordingly, the trial court abused its judicial discretion in erroneously excluding Mr. Olson's expert testimony as to the cause of the exterior and interior paint failure. The trial court's error, however, in excluding Mr. Olson's expert testimony is harmless error in light of our determination as to the second issue that the trial court's judgment is supported by the evidence in this record.

■ ■ Initially, in regard to the second issue, we believe the principle of accord and satisfaction is particularly persuasive. This principle is applicable where "that which was done or given was accepted in satisfaction, and * * * the accord or agreement has been fully executed."

(1 Ill. L. & Prac. *Accord and Satisfaction* §71 (1968).) Herein, we find that the parties reached an accord and satisfaction on November 18, 1973, which mandates that plaintiff be appropriately compensated for his services under the agreement. Our decision is predicated on the fact that the parties arrived at an accord and satisfaction as to plaintiff's work and the price to be paid for such work on the above date, where the parties compromised and settled their differences for $2,850, which sum Mr. Geist promised to mail to plaintiff the next day. The parties at this time had reached a meeting of the minds in regard to this dispute, and thereafter defendants failed to fulfill their part of the settlement by mailing a check for $2,850 to plaintiff on the next day. Accordingly, plaintiff is entitled to satisfaction and performance of the terms of the parties' accord. The trial court obviously reached the same conclusion when it awarded the plaintiff the sum of $2,800 and plaintiff's cost of suit and denied defendants' counterclaim in its entirety. We believe the evidence amply supports such a determination by the trial court.

Inasmuch as we have determined that the parties reached an accord and satisfaction on November 18, 1973, it is unnecessary to discuss defendants' other contentions. In addition, although plaintiff has not specifically pleaded the theory of an account stated as a basis for imposing liability on the defendants, we believe the reasoning for this principle is also applicable to our factual situation. In *Soft Water Service, Inc. v. M. Suson Enterprises, Inc.* (1976), 39 Ill. App. 3d 1035, 1040, 351 N.E.2d 264, 268, an account stated was defined as:

> "* * * an agreement between parties * * * that the account representing these transactions is true, so that the balance is correct, together with a promise which may be express or by implication for payment of this balance."

In our opinion, Mr. Geist's aforementioned verbal acknowledgment and recognition of the amount owed and his acceptance of a Waiver of Lien in the amount of $13,450 in exchange for his promise to pay $2,850 form a sufficient foundation for the trial court to impose liability upon the defendants under the additional theory of account stated.

The judgment of the circuit court of Lake County for plaintiff and against the defendants in the amount of $2,800 plus plaintiff's cost of suit and its denial of defendants' counterclaim in its entirety is affirmed.

Judgment affirmed.

RECHENMACHER and NASH, JJ., concur.