COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 169, Plaintiff-
Counterdefendant-Appellee and Cross-Appellant, *v.* MENELEY
CONSTRUCTION COMPANY *et al.*, Defendants-Cross-Appellees.—
(MENELEY CONSTRUCTION COMPANY, Counterplaintiff-Appellant.)

Fourth District   No. 15922

Opinion filed August 5, 1980.

Vance I. Kepley, of Reno, O'Bryne & Kepley, of Champaign, for appellant.

John H. Finfrock, of Finfrock & Weaver Law Offices, and Johnson, Frank & Frederick, both of Urbana, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of this court:

This is an appeal by Meneley Construction Company (Meneley) from the trial court decision denying its counterclaim for rescission and granting Community Consolidated School District No. 169 (District) recovery for breach of contract. The District has cross-appealed from the denial of its request for attorney fees and for recovery of the full face amount of surety bond. We affirm.

The District advertised bids to construct an addition to one of its buildings. Meneley submitted the low bid for the project and signed a construction contract with the District on the day that bids were opened. Meneley executed a contract with Fidelity and Deposit Company of Maryland (hereinafter surety) to act as surety, and the surety then executed a performance bond in the District's favor for the full contract price, $337,928.

The construction company began some preliminary work on the project, and less than two weeks after signing the construction contract, Meneley discovered a clerical error in its bid. Meneley immediately notified the District and the District architect that it was unilaterally terminating the contract. The District, without releasing Meneley from liability, entered into a construction contract with the next lowest bidder for its original bid price of $358,380.

The District then filed suit against Meneley and the surety for the difference in contract price, sued the surety for the full amount of the performance bond as punitive damages, and sued both defendants for attorney fees and cost. Meneley counterclaimed for rescission of the contract. After a bench trial, the court found in the District's favor and awarded it the difference between the two contract prices, $20,452, but denied it recovery for its attorney fees or recovery of the full amount of the performance bond. The court denied Meneley's counterclaim for rescission of the contract.

Meneley contends that because the error in its bid was clerical only, and constituted a material portion of the total bid price, it was entitled to rescission. Concededly, the error was clerical. The error occurred when the president of the construction company transposed the bid of a subcontractor from the "worksheet" to the "recapitulation sheet," mistakenly entering a $39,000 subcontractor's bid on the recapitulation sheet as $3,900.

The rules governing rescission in bid cases were recently enunciated

by the supreme court in *John J. Calnan Co. v. Talsma Builders, Inc.* (1977), 67 Ill. 2d 213, 367 N.E.2d 695, in which the court stated that three conditions precedent exist to rescission based upon a mistake by one of the parties.

> "First, the mistake must relate to a material feature of the contract; second, it must have occurred despite the exercise of reasonable care; and third, the other party must be placed *in statu quo*." 67 Ill. 2d 213, 218, 376 N.E.2d 695, 698.

Here, the trial court found that the mistake was material as it amounted to greater than 10 percent of the contract price. The court further found that the district had been placed *in statu quo*, in light of the early discovery of the mistake and the fact that the District was able to enter into a contract with the next lowest bidder for its original price. But the trial court held that the second condition was not satisfied in that Meneley had not exercised reasonable care in preparation of its bid. Specifically, the court found Meneley negligent in not checking the transposition of the figures.

At trial, the testimony established that in preparing its bid, Meneley used its regular checking and preparation methods. Meneley's vice-president stated that its review system did not include checking the transposition of figures from the worksheet to the recapitulation sheet. The District's expert witness testified that in his opinion, the practice in the industry required a second person to cross-check the bid figures for transpositional errors.

■■ The trial court's decision that Meneley was negligent in not cross-checking the figures is not against the manifest weight of the evidence. In *John J. Calnan Co.*, the defendants were considered negligent because they had a checking system which they did not use. Here too, Meneley did not have a sufficient checking system where both logic and the standard practice in the community would require checking for the type of error that in fact occurred.

Meneley asserts that the trial court erred in considering the testimony of the District's "expert," Charles Hunt, because he was not properly qualified. A determination that a witness is an expert is within the sound discretion of the trial court. (*Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 250, 302 N.E.2d 257, 264.) The trial court, in its memorandum opinion in this case, reviewed Mr. Hunt's qualifications:

> "The School Board offered as an expert witness Charles Hunt who testified that he had been in construction work for 20 years. He had attended college for two years in civil engineering, had graduated from a technical building trade school and had been employed by four general contractors, including Meneley. He had been employed by other companies as an estimator, had prepared

bids, attended contractor meetings and courses and talked to other contractors about their procedures."

■■ The general rule is that a witness will not be permitted to testify as an expert unless he has knowledge or experience beyond the ken of the average person. (*Atria v. Geist* (1978), 64 Ill. App. 3d 88, 92, 380 N.E.2d 1187, 1190.) We find that the trial court did not abuse its discretion in finding Hunt possessed qualifications beyond the ken of the average person regarding preparations of bids for construction contracts and allowing him to give his opinion on that subject.

The District argues, on cross-appeal, that the court erred in failing to enter judgment for the full amount of the bond against the surety. The bond was a performance bond insuring the performance by the contractor of the construction contract. The bond provided that if the contractor was in default on the contract, the surety should remedy the default or either (1) complete the contract, or (2) obtain bids for the completion of the contract, arrange a contract with the low bidder for completion and make funds available to pay the cost of completion less the contract price, and pay various other costs, the total of which was not to exceed the bond amount.

Admittedly, the surety, upon the contractor's default, did not perform under the bond. The bond is a contract, and therefore the surety breached that contract. The District asserts that because the surety did not perform, it is obligated to pay the full amount of the bond, that being $337,928.

■■ The District states on appeal that it is requesting the full amount of the bond as actual damages. In its complaint, it requested that amount as punitive damages. The latter is not even indicated, and the former would not be compensation but a windfall. The District's actual damages simply did not equal the face amount of the bond. Nor is the face amount of the bond recoverable as punitive damages. Punitive damages are not recoverable for a breach of contract except in the exceptional case where the breach amounts to an independent intentional tort. (*Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373, *appeal denied* (1978), 71 Ill. 2d 602; *Wallace v. Prudential Insurance Co. of America* (1973), 12 Ill. App. 3d 623, 299 N.E.2d 344.) Here, the surety's failure to perform on the bond when Meneley rescinded was at most a breach of contract, and the District has demonstrated nothing remotely resembling an independent intentional tort to support its claim.

■■ The District also contends that it should have been awarded attorney fees by the trial court. On appeal, it bases its contention on the statutory provision of the Illinois Insurance Code which provides for an award of attorney fees in cases where an insurance company refuses to pay a claim on a policy and it appears to the court that such nonpayment was

vexatious and without reasonable cause (Ill. Rev. Stat. 1979, ch. 73, par. 767). The District did not plead in its complaint the applicability of this provision to the surety bond, it did not present evidence to support its claim for the vexatious nature of the surety's action at trial, nor did it refer to this statute in its post-trial motion. Further, the trial court did not mention this section of the statute in its comprehensive memorandum opinion in this case. Therefore, it appears from the record that the District is arguing the applicability of this statute to the instant case for the first time on appeal. Thus, the District has waived the issue of attorney fees under the Insurance Code. *Snow v. Dixon* (1977), 66 Ill. 2d 443, 453, 362 N.E.2d 1052, 1056.

An award of attorney fees is not authorized in the absence of some statutory basis. *City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 113-14, 357 N.E.2d 1154, 1156.

We find no authority that would permit the allowance of attorney fees. It is apparent, however, that a denial of fees imposes upon the District a burden that has its origin in Meneley's negligence. While the District is not entitled to a windfall in the form of extensive compensatory damages nor to punitive damages, the existing rules regarding attorney fees leaves it without a full recovery.

Judgment affirmed.

MILLS, P. J., and WEBBER, J., concur.