No. 49,911

TRIPLE A CONTRACTORS, INC., *Appellant,* v. RURAL WATER DISTRICT
NO. 4, NEOSHO COUNTY, KANSAS, *Appellee.*

(603 P.2d 184)

Opinion filed December 1, 1979.

*Larry G. Pepperdine,* of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause and was on the brief for the appellant.

*Charles F. Forsyth,* of Erie, argued the cause and was on the brief for the appellee.

*Per Curiam:* This appeal is from a judgment denying equitable relief in the form of cancellation of a public construction bid and the discharge and release of the bid bond.

The only issue before us is whether the successful bidder for a public construction contract will be granted equitable relief by way of cancellation of the construction bid and the discharge and release of its bid bond because of a unilateral error in calculating costs.

On March 4, 1976, Rural Water District No. 4, Neosho County, Kansas, issued a notice to contractors that bids would be received for the construction of a water distribution and storage system. We are concerned here only with the water distribution system. The bids were to be accompanied by a check or bid bond in the amount of 5% of the total bid. The stated purpose of the bid bond was to guarantee that the contractor would enter into a construction contract within ten days of the award of the contract.

The plaintiff company submitted its bid and a bid bond in the amount of $40,637.65. It might be explained here that the plaintiff company is a family corporation consisting of Glen Anderson and his five children. Steve Anderson, the twenty-seven-year-old son of Glen Anderson, was assistant general manager. The bid submitted by plaintiff was prepared by Steve Anderson.

The bids were opened on March 24, 1976. The plaintiff's bid was $812,753.00. This was $169,079.50 lower than the next lowest bid and $486,154.50 lower than the defendant's consulting

engineer's estimate. Because of the wide variation between the low bidder and the second low bidder all parties concerned suspected an error. Glen and Steve Anderson spent two or three days going through the plans and cost estimate sheets looking for an error.

The error was found on March 27, 1976. The chief error had been made in transferring the calculated amount of shot rock from the adding machine tape to the bid project estimate sheets. Only 6,000 lineal feet of the 36,000 lineal feet had been carried over to the estimate sheets. Glen Anderson testified this was the sole purpose for requesting withdrawal of the bid. On March 29, 1976, defendant's consulting engineer talked to Glen Anderson about the bid. Glen Anderson informed the defendant's consulting engineer that an error had been made and he wished to withdraw the bid. No mention was made of the nature of the error.

On March 31, 1976, the plaintiff sent a letter to the defendant requesting withdrawal of the bid on the basis of gross error in cost estimating. Glen Anderson testified that he did not use the term "mathematical error" in the letter because he did not know the type of error was important. The defendant, the Rural Water District Board, voted to accept appellant's bid on April 21, 1976. Glen Anderson met with the board on May 4, 1976, and explained the exact nature of the error. At the meeting the plaintiff rejected the contract.

Plaintiff brought action in the district court, alleging a mistake in the form of a clerical error in the computation of the quantity of rock to be excavated and prayed that the acceptance of the bid be cancelled, its bid be rescinded and cancelled, and its bid bond be cancelled.

The district court in memorandum opinion stated as follows:

"The controlling question is whether a bidder on a construction contract can be relieved from obligation under his bid bond for his unilateral mistake in figuring his bid. No Kansas decision has been turned up and the authorities in other states are divided, probably the majority rule being that he can.

"As simple contract law the Kansas Supreme Court has consistently held that unilateral mistake will not excuse non performance."

The trial court followed the Kansas general rule that a unilateral mistake will not excuse nonperformance of a contract and denied the plaintiff any relief. The plaintiff has appealed.

Before we proceed with a discussion of the law we should be

clear on the issue before us. There has been a great deal of confusion in the decisions because of the failure to distinguish between the contract involved in the bid and the construction contract which would result from the bid contract. The appellee is not attempting to hold the plaintiff to a construction contract which because of errors might result in a tremendous loss of an unknown amount. The appellee is holding appellant to his bid contract under which he can forfeit the bid bond in a known amount and be relieved of the obligations of the construction contract.

We have no Kansas case dealing with the affect of an error on a bid contract. However, we see no reason why our cases announcing the rule that in the absence of fraud a unilateral mistake will not excuse the nonperformance of a contract should not apply. See *Snider v. Marple,* 168 Kan. 459, 213 P.2d 984 (1950); *Green v. Insurance Co.,* 112 Kan. 50, 209 Pac. 670 (1922); *Commission Co. v. Mowery,* 99 Kan. 389, 161 Pac. 634 (1916), *modified* 99 Kan. 399 (1917); *Griffin v. O'Neil,* 48 Kan. 117, 29 Pac. 143 (1892).

The courts of other states are divided on the question. Appellant calls our attention to the general rule set forth in 52 A.L.R.2d 796, as follows:

"Equity will relieve from the consequences of a bid for a public contract which has been submitted as the result of a remediable unilateral mistake, although a contract has not been consummated, and the principles applied are generally similar to those applied in relieving against completed contracts resulting from unilateral mistake."

This may state the position of those state courts which have granted relief on a unilateral mistake. We are more impressed with a contrary decision in *Colella v. Allegheny County, Aplnt.,* 391 Pa. 103, 107, 137 A.2d 265 (1957), where the court denied relief under facts quite similar to those in the case before us and stated:

"If a person, firm or corporation submits a sealed bid on public works, the principle contended for by the contractor, namely, that after all the bids are opened he can withdraw his bid under the plea of a clerical mistake, would seriously undermine and make the requirement or system of sealed bids a mockery; it could likewise open wide the door to fraud and collusion between contractors and/or between contractors and the Public Authority. What is the use or purpose of a sealed bid if the bidder does not have to be bound by what he submits under seal? What is the use or purpose of requiring a surety bond as

further protection for the public, i.e. the municipality, if a bidder can withdraw his bid under plea of clerical mistake, whenever he sees that his bid is so low that he must have made an error of judgment?"

We see no occasion to make a distinction between a clerical error and an error in judgment. The very purpose of the bid bond was to require the bidder to go forward with the construction contract regardless of his errors in arithmetic or judgment. The ruling does not require plaintiff to perform a contract at a terrific loss. It does require that he pay the penalty contemplated by and inherent in the bidding procedure. Were we to hold otherwise we would materially weaken the purpose of the bidding procedure on public contracts.

We are inclined to agree with the trial court in its conclusions. The bid contract was complete and the bid bond was in effect when the bids were opened. The general rule in Kansas, that in the absence of fraud a unilateral mistake does not excuse the nonperformance of a contract, applies to a bid contract for a public construction project.

The judgment is affirmed.

FROMME, J., not participating.

PRAGER, J., dissenting. I respectfully dissent. The majority has chosen to adopt a minority position in holding that one who makes a unilateral mistake in bidding on a construction contract is precluded in all cases from seeking equitable relief by way of rescission. Jones, *The Law of Mistaken Bids,* 48 Cin. L. Rev. 43 (1979). The basis of the court's decision is the fear that to hold otherwise would undermine the integrity of the bidding system. The opinion makes it clear that the bid contract, not the construction contract, is what is being enforced.

Most jurisdictions allow relief by rescission from a unilateral mistake in the bid situation when the following criteria are met:
1. The bidder has acted honestly, in good faith, and without gross or willful negligence;
2. The bidder was reasonably prompt in notifying the contracting party of the error;
3. The mistake pertained to a material part of the contract;
4. The mistake was of such magnitude that enforcement or forfeiture would be unconscionable;

5. Relief would return the parties to the status quo without prejudice to the contracting party; and
6. Evidence is presented which convincingly establishes the mistake in fact exists.

*M.F. Kemper Const. Co. v. City of L.A.,* 37 Cal. 2d 696, 235 P.2d 7 (1951); *J. T. Taylor & Sons v. Ar. Ind. Sch. Dis.,* 160 Tex. 617, 335 S.W.2d 371 (1960); *Baltimore v. DeLuca-Davis Co.,* 210 Md. 518, 124 A.2d 557 (1956); 13 Williston on Contracts § 1578, at p. 507 (3rd ed. 1970).

Some courts distinguish the bid bond from the performance bond and deny relief when the issue is forfeiture of the bid bond posted as liquidated damages for failure to enter into the awarded contract. See, *e.g., Trvlrs. Indm. Co., Aplnt. v. Susqha. Co. Com.,* 17 Pa. Commw. Ct. 209, 331 A.2d 918 (1975); *Board v. S-W Co.,* 22 Ohio St. 2d 107, 258 N.E.2d 605 (1970). The vast majority of the jurisdictions, however, allow relief from forfeiture in bid bond cases when the accepting party knew or should have known of the error before acceptance, as when the party has been specifically notified or the price disparity indicates probable error. *Balaban-Gordon v. Brighton Sewer Dist.,* 67 Misc. 2d 76, 323 N.Y.S. 724 (1971); *Baltimore v. DeLuca-Davis Co.,* 210 Md. 518; *M. F. Kemper Const. Co. v. City of L.A.,* 37 Cal. 2d 696; 13 Williston on Contracts § 1573 (3rd ed. 1970); Restatement of Restitution § 12 (1937 Supp.); 2 Palmer's Law of Restitution § 12.20, at p. 687 (1978); 64 Am. Jur. 2d, Public Works and Contracts § 84, at p. 945.

In the case before us, the six criteria for rescission of the contract are present. The findings of the district court justify rescission of the bid bond in this case. Defendant was notified of Triple A's error before acceptance, and was able to award the contract to the next lowest bidder without readvertising. Defendant was not prejudiced by the withdrawal of the bid and had no change of position. Plaintiff should not be subjected to a $40,000 loss because a young man made an innocent mistake in transferring the calculated amount of shot rock from the adding machine tape to the bid project estimate sheets. The purpose of rescission is to prevent unjust enrichment. To unjustly enrich defendant by allowing enforcement of the bid bond in this case is unfair, unjust, and grossly inequitable.

Accordingly, I dissent.

MILLER, J., joins the foregoing dissenting opinion.