No. 65,462

LORRAINE ALBERS and RALPH G. LUTHER, JR., *Appellees*, v. LORING L. NELSON and ROSEMARY NELSON, *Appellants*.

(809 P.2d 1194)

Opinion filed April 12, 1991.

*Henry O. Boaten,* of Junction City, argued the cause and was on the brief for appellants.

*Walter P. Robertson,* of Walter P. Robertson, Chtd., of Junction City, argued the cause, and *Robert L. Constable,* of Robert L. Constable, Chtd., of Salina, was with him on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This is an ejectment action. Plaintiffs Lorraine Albers and Ralph Luther seek to recover possession of real estate sold to them by defendants Loring and Rosemary Nelson. The Nelsons resist, contending the sale agreement was intended as an equitable mortgage, and assert the contract is void based upon fraud and usury. The district court granted summary judgment to Albers and Luther, finding that the contract was clear and unambiguous, that fraud was improperly pled, that there was insufficient evidence to support a claim of fraud, and that the contract was not usurious.

In considering the motion for summary judgment, the party against whom judgment is sought is entitled to the benefit of all reasonable inferences and doubts that may be drawn from the facts under consideration. *Citizens State Bank v. Gilmore,* 226 Kan. 662, 663, 603 P.2d 605 (1979). Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Patterson v. Brouhard,* 246 Kan. 700, 702, 792 P.2d 983 (1990).

The Nelsons owned two tracts of land in Saline County, Kansas, containing 180 acres of land, and some farm machinery. On September 26, 1985, the Production Credit Association and the Federal Land Bank foreclosed upon the real estate and farm machinery. The real estate and machinery were sold at a sheriff's sale and the redemption period was set for expiration on May 24, 1988.

Shortly before the redemption period expired, the Nelsons contacted Ralph Luther to see if he could obtain the funds necessary for redemption. On May 23, 1988, the Nelsons met with Albers and Luther to discuss financing the transaction. The Nelsons contend they reached an agreement whereby Albers and Luther would lend them $109,579.08 to redeem the property from foreclosure and the Nelsons would secure the loan by transferring the title to Albers and Luther. The parties agreed Luther's attorney, Robert Constable, would draw up the necessary documents.

On May 24, 1988, Albers obtained a cashier's check for $109,579.08, and all the parties went to the courthouse, where redemption was made on the foreclosed property. The parties then returned to Robert Constable's office, where the agreement, warranty deeds, bill of sale, and statement of representation were signed. The Nelsons claim they believed the transaction was a loan arrangement and, therefore, did not read the contract before signing it.

Under the terms of the written contract, the Nelsons conveyed absolute title to their real estate and farm machinery to Albers and Luther. The agreement provided that the Nelsons were to pay $300 monthly rent for the house and outbuilding and that the Nelsons had the right to repurchase the real estate and machinery for $119,579.08 plus 12.25% interest on or before May 24, 1989. Upon the event of default of the rental payments or failure to purchase the property within one year, the Nelsons agreed to peaceably vacate the premises. In addition, Albers and Luther were entitled to all rents, profits, emoluments, government payments, and other income produced from the real estate.

The Nelsons failed to purchase the property by May 24, 1989, and Albers and Luther filed an action in ejectment on May 25, 1989. The Nelsons claim the transaction was a mortgage and loan and never intended as an outright sale with the option to purchase. Upon the completion of discovery, Albers and Luther filed a motion for summary judgment, which the district court granted. Thereafter, Albers and Luther were granted immediate possession of the real estate and the Nelsons were ordered to vacate the premises by June 10, 1990. The district court refused to approve the Nelsons supersedeas bond, and this appeal followed.

I

The Nelsons first contend summary judgment was improper because factual issues remained in dispute. They assert the district court should have considered whether there was a meeting of the minds on the agreement, the intention of the parties, and the effect of prior negotiations. The district court examined the written agreement and found that it was clear and unambiguous and also determined it was not based on fraud or misrepresentation.

As a general rule, the interpretation of a written contract that is free from ambiguity is a judicial function and does not require oral testimony to determine the contract's meaning. *Hall v. Mullen,* 234 Kan. 1031, 1037, 678 P.2d 169 (1984). An ambiguity does not appear until two or more meanings can be construed from the contract provisions. *Wood River Pipeline Co. v. Willbros Energy Services Co.,* 241 Kan. 580, 582, 738 P.2d 866 (1987). In the present case, the parties do not argue conflicting provisions exist within the contract; thus, we find no ambiguity.

The written contract clearly states the Nelsons conveyed absolute title of the real estate and farm machinery:

"WHEREAS, said parties of the first part have conveyed said land and farm machinery absolutely and not for the purposes of security, and

"WHEREAS, parties of the first part wish to contract with parties of the second part for the sale and repurchase of said real estate and said farm machinery, and the parties wish to provide for a lease of the house and out buildings located on said real estate as a place of residence for parties of the first part."

In addition, the contract expressly set forth the conditions and contingencies of repurchasing the property and Albers' and Luther's rights as the absolute owners of the property.

Where contracting parties have carried out negotiations and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights. *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.,* 243 Kan. 130, 135, 754 P.2d 803 (1988); *Hall v. Mullen,* 234 Kan. at 1037.

It is a well-established rule of law that contracting parties have a duty to learn the contents of a written contract before signing

it, and such duty includes reading the contract and obtaining an explanation of its terms. *Sutherland v. Sutherland,* 187 Kan. 599, 610, 358 P.2d 776 (1961). The negligent failure of a party to read the written contract entered into will estop the contracting party from voiding the contract on the ground of ignorance of its contents. *Rosenbaum v. Texas Energies, Inc.,* 241 Kan. 295, 299, 736 P.2d 888 (1987). Therefore, a party who signs a written contract is bound by its provisions regardless of the failure to read or understand the terms, unless the contract was entered into through fraud, undue influence, or mutual mistake. *Rosenbaum,* 241 Kan. at 299; *Washington v. Claassen,* 218 Kan. 577, 580, 545 P.2d 387 (1976); *Sutherland,* 187 Kan. at 610. Thus, the contract here is binding as written unless the Nelsons plead and offer evidence of fraud in its inception under which circumstance parol evidence may be admitted to vary the terms of the written instrument.

The Nelsons contend Albers, Luther, and their attorney, Constable, fraudulently misrepresented facts and information which induced them to enter into the contract to their detriment. The Nelsons assert that Albers and Luther conveyed the impression they would assist in a loan for redemption purposes. Further, the Nelsons contend they were required to sign the documents under strained circumstances and had no opportunity to consult their own attorney. They allege the entire transaction was hurried and confused in order to get all the necessary documents completed prior to expiration of the redemption period.

Fraudulent misrepresentation includes affirmative acts and misstatements of fact or the concealment of acts or facts which legally or equitably should be revealed. *Citizens State Bank v. Gilmore,* 226 Kan. at 667. Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, which is made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his or her injury and damage. *Nordstrom v. Miller,* 227 Kan. 59, 65, 605 P.2d 545 (1980).

Fraudulent misrepresentation as to the legal effect of an instrument will void a contract. *Stegman v. Professional & Business Men's Life Ins. Co.,* 173 Kan. 744, 751, 252 P.2d 1074 (1953). Nevertheless, the fact that a party signs a contract and does not

know its contents is not alone sufficient to permit that party to void it. *McKay v. Clark,* 162 Kan. 653, 659, 178 P.2d 679 (1947).

The Nelsons claim of fraudulent misrepresentation is based entirely upon their mistaken belief the agreement was for a loan rather than the sale of the real estate and farm machinery. The Nelsons, however, failed to produce any evidence that Albers, Luther, or Constable made an untrue statement with the intent to deceive or reckless disregard for the truth. Rosemary Nelson stated she knew Constable was plaintiffs' attorney and could not say that he tricked them into signing the agreement. Rosemary believed the documents pertained to a loan transaction and did not read the agreement carefully because the parties were rushed to get everything finished. Loring Nelson stated he did not know there was a sale and that he trusted Albers and Luther and believed the rushed transaction was necessary.

The burden of proof is on the Nelsons to prove fraud by clear and convincing evidence. *Nordstrom v. Miller,* 227 Kan. at 65. We hold that the district court correctly determined there was insufficient evidence to support a claim of fraud and that summary judgment was proper.

## II.

Next, the Nelsons assert the contract is void because there was no meeting of the minds as to all essential terms of the contract.

In order to form a binding contract, there must be a meeting of the minds on all essential elements. *Sidwell Oil & Gas Co. v. Loyd,* 230 Kan. 77, 79, 630 P.2d 1107 (1981). In the event of a mutual mistake, either of law or of fact, on the terms of the contract, the contract is not binding on the parties. See *Rosenbaum v. Texas Energies, Inc.,* 241 Kan. at 301-02. As a general rule, however, in the absence of fraud, a unilateral mistake will not excuse nonperformance of a contract. *Triple A Contractors, Inc. v. Rural Water Dist. No. 4,* 226 Kan. 626, 628, 603 P.2d 184 (1979); *Squires v. Woodbury,* 5 Kan. App. 2d 596, 598, 621 P.2d 443 (1980), *rev. denied* 229 Kan. 671 (1981).

In the case at hand, there was no mutual mistake as to the terms of the contract. Albers and Luther believed the agreement was for the outright sale of real estate and farm machinery with an option to repurchase within one year. The Nelsons, however,

claim they believed the transaction represented a loan secured by collateral. Thus, any mistake was unilateral in nature and insufficient to void the contract.

Our examination of the agreement, pleadings, and record leads to the conclusion that the contract is valid and not based upon fraudulent misrepresentations or mutual mistake. The Nelsons' failure to read and scrutinize the agreement does not preclude enforcement of the contract. We find there were no genuine issues of fact in dispute and affirm the district court's order granting summary judgment to Albers and Luther.

Finally, the Nelsons claim error in the district court's refusal to reconsider the summary judgment ruling. In support of their motion for reconsideration, they submitted a letter written by Lorraine Albers which they allege supports their position that the agreement was intended as a loan transaction.

The letter submitted by the Nelsons provides no evidence of fraud or mutual mistake. To oppose a motion for summary judgment, a party must present something of evidentiary value to establish a material factual dispute. *Slaymaker v. Westgate State Bank*, 241 Kan. 525, Syl. ¶ 1, 739 P.2d 444 (1987). In this instance, the letter provides no evidence to support the Nelsons' claim and, in addition, was presented out of time.

The judgment of the district court is affirmed.